UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

---

NICHOLAS SCHLUETER,

    Plaintiff,

v.                                            Case No. 17-C-1001

TYSON MATNEY, *et al.*,

    Defendants.

---

### DECISION AND ORDER GRANTING SUMMARY JUDGMENT

Plaintiff Nicholas Schlueter, an inmate currently incarcerated at the Bartholomew County Jail and representing himself, filed this action under 42 U.S.C. § 1983, alleging that Defendants Tyson Matney, Chad Moore, and Toby Combest violated his civil rights when they arrested him after purchasing methamphetamine from him during two controlled buys involving a confidential informant. This matter comes before the court on two motions for summary judgment: a joint motion by Defendants Moore and Combest (ECF No. 36) and an individual motion by Defendant Matney (ECF No. 40). During a telephone hearing on February 6, 2018, the court granted Schlueter an additional thirty days to respond to the defendants' motions for summary judgment and explained that, in the absence of a response, the court would decide the motions on the record as it now stands. ECF No. 49. Since that hearing, the court has received no response from Schlueter and will therefore proceed to decide these summary judgment motions. Also before the court is a joint motion by all defendants seeking an extension of time to conduct additional discovery in the event the court denies the motions for summary judgment. ECF No. 50. For the reasons set forth below,

the defendants' motions for summary judgment will both be granted, and their joint motion for an extension of time will be denied as moot.

## BACKGROUND

Schlueter's claim arises out of a January 2016 investigation of his suspected methamphetamine dealing by a joint narcotics task force consisting of personnel from the Bartholomew County Sheriff's Department and the Columbus Police Department. Matney Br., ECF No. 43 at 2 (citing ECF No. 41-1 ¶ 1).[1] Matney, a detective with the Bartholomew County Sheriff's Department, used an undercover identity during purchases from Schlueter that occurred on January 6, 2016, and January 11, 2016. *Id.* (citing ECF No. 41-1 ¶ 2). Moore, a detective with the Columbus Police Department, provided logistical and operational support for the task force during the purchases. Moore & Combest Br., ECF No. 37 at 2 ("M&C Br.") (citing ECF No. 36-1 ¶ 4). Combest, also a Columbus detective, worked with Matney and others, including a confidential informant, to set up the purchases. *Id.* at 2–3 (citing ECF No. 36-1 ¶ 5); *see also* ECF No. 41-2 ¶ 4. In addition to the confidential informant, the task force employed investigative measures including an audio recording device, electronic monitoring equipment, pre-marked cash, and undercover identities. Matney Br. at 2 (citing ECF No. 41-2 at 1; ECF No. 41-3 ¶¶ 15–20; ECF No. 41-4 ¶¶ 8–14).

---

[1] All of the background facts come from the proposed findings of fact set forth in the defendants' briefs. Schlueter has failed to respond to defendants' motion for summary judgment in compliance with Civil Local Rule 56-1(b) (S.D. Ind.). Therefore, all facts within defendants' proposed findings of fact that are properly supported will be deemed admitted. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the non-movant as mandated by the local rules results in an admission.").

The January 6, 2011, methamphetamine purchase occurred in the parking lot of a McDonald's in Edinburgh, Indiana. ECF No. 36-1 ¶ 7. Matney met with the confidential informant and performed a strip search to confirm that the informant did not possess any methamphetamine, and they then drove together in an undercover vehicle to the location set for the purchase. ECF No. 36-2 ¶¶ 2–5. After they arrived at the purchase location, where the task force was in place, Schlueter entered the rear of the undercover vehicle and gave the informant a bag containing a clear, crystal-like substance in exchange for $675 in pre-marked cash. ECF No. 36-1 ¶ 7. A field test indicated that the crystal-like substance was methamphetamine, and a subsequent test by the Indiana State Police Laboratory confirmed that result. C&M Br at 3 (citing ECF No. 36-1 ¶¶ 10, 12). At 10:41 p.m. on January 6, the methamphetamine was placed into a drop box locker at the Columbus Police Department. *Id.* (citing ECF No. 36-1 ¶¶ 11).

For the January 11, 2016, purchase, Matney and the informant again drove together to the designated location. Matney Br. at 3 (citing ECF No. 41-1 ¶ 3). After they arrived, Matney performed a search to confirm that the informant did not possess any methamphetamine. Matney Br. at 3 (citing ECF No. 41-1 ¶ 4). The informant then got out of their vehicle, entered Schlueter's vehicle, and returned with two small bags containing a substance suspected to be methamphetamine. *Id.* (citing ECF No. 41-1 ¶ 4); C&M Br. at 3 (citing ECF No. 36-1 ¶ 19). Schlueter had sold the bags of the crystal-like substance to the informant for $1,140 in pre-marked cash at approximately 10:45 p.m. C&M Br. at 3 (citing ECF No. 36-1 ¶¶ 15–18). Matney took possession of the suspected methamphetamine from the informant and performed a field test, which confirmed that the substance was likely methamphetamine. Matney Br. at 3 (citing ECF No. 41-1 ¶ 5).

After performing the field test, Matney gave the two bags to Moore. M&C Br. at 4 (citing ECF No. 36-1 ¶ 20). At 12:30 a.m. on January 12, 2015, Moore placed the two bags of suspected methamphetamine into a sealed evidence bag, which he in turn placed in a locked drop box at the Columbus Police Department evidence room. *Id.* (citing ECF No. 36-1 ¶ 20). On the evidence bag, Moore wrote his officer number, the case number, the date, the time, the phrase "Drop Box" in the "Chain of Custody" section to indicate where he put the bag, and a note describing the bag's contents as "[p]lastic bags containing a white crystal substance." *Id.* (citing ECF No. 36-1 ¶¶ 21–22); ECF No. 36-7.

Separately, Moore helped to complete a "Columbus Police Property Record and Receipt" form, which included a "Record of Custody" section. *Id.* at 4–5 (citing ECF No. 36-1 ¶ 23). When completing the form, however, Moore made a mistake—what he calls a "scrivener's error"—and inadvertently omitted a "1" when writing the "12" in the date portion of the Record of Custody section; as a result, the date reads "1-2-16," rather than "1-12-16," as he intended. *Id.* at 5 (citing ECF No. 36-1 ¶¶ 23–25); ECF No. 36-8. Instead of referring to both bags, the "Details" section of the form also lists only one item, a "plastic bag" (singular) "containing a white crystal substance." ECF No. 36-8. The Columbus Police Department's property officer signed the Record and Receipt form at 3:45 p.m. on January 13, 2018. ECF No. 36-8. The Indiana State Police laboratory later confirmed that the substance in both bags was methamphetamine. M&C Br. at 5 (citing ECF No. 36-11).

Matney signed a probable cause affidavit in support of an arrest warrant for Schlueter on September 22, 2016. Matney Br. at 4 (citing ECF No. 41-1 ¶ 8; ECF No. 41-2). The affidavit recounted both the January 6, 2016 and the January 11, 2016 purchases from Schlueter. *Id.* (citing

4

ECF No. 41-2). An arrest warrant issued, resulting in Schlueter's arrest on October 6, 2016, by a Bartholomew County Sheriff's deputy, who transported Schlueter to the county jail. ECF No. 41-3 ¶¶ 30–31. Schlueter was charged with two counts of dealing methamphetamine, one count each for the January 6 and January 11 sales. *Id.* ¶¶ 32–33. In early March 2017, he filed a motion to suppress the evidence from the January 11, 2016 sale based on the discrepancies in the Record and Receipt form. Matney Br. at 4 (citing ECF No. 41-7). Shortly thereafter, the court dismissed without prejudice the charge related to the January 11 sale. ECF No. 41-6. Matney filed this action soon after. At the time the defendants filed their summary judgment motions, the charge against Schlueter for the January 6 sale remained pending and was set for trial in March 2018. Matney Br. at 4 (citing ECF No. 41-6).

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotation mark omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). When evaluating whether claims brought under 42 U.S.C. § 1983 survive summary judgment, the court must determine "(1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the

5

Constitution or laws of the United States." *Colbert v. City of Chicago*, 851 F.3d 649, 656 (7th Cir. 2017) (quoting *Armato v. Grounds*, 766 F.3d 713, 719–20 (7th Cir. 2014)).

**ANALYSIS**

Schlueter's complaint asserts claims for illegal search and seizure, false arrest, false imprisonment, malicious prosecution, and violations of his due process rights. Matney contends that the defendants are all entitled to summary judgment on these claims. All three defendants also argue that they are entitled to qualified immunity, and Moore and Combest raise additional miscellaneous arguments. The court will therefore begin its analysis by addressing whether the defendants are entitled to summary judgment on Schlueter's claims before proceeding to the other arguments if necessary.

**I. Illegal Search and Seizure**

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." Based on the undisputed facts, none of the defendants deprived Schlueter of rights protected by the Fourth Amendment.

At the outset, no search occurred under the undisputed facts of this case. None of the investigating officers entered Schlueter's vehicle as part of the January 6 or the January 11 purchase operations; only the confidential informant ever did so. Even if, for example, Matney had entered Schlueter's vehicle in his capacity as an undercover officer, such an entry would not violate Schlueter's Fourth Amendment rights. The Supreme Court has held that a law enforcement officer did not violate a defendant's Fourth Amendment rights where the defendant "invited the undercover

6

agent to his home for the specific purpose of executing a felonious sale of narcotics." *Lewis v. United States*, 385 U.S. 206, 210 (1966). Surely Schlueter enjoyed no greater Fourth Amendment protection when he invited a confidential informant into his vehicle, which by its nature implicates a lesser privacy interest than would the home. *See Arizona v. Gant*, 556 U.S. 332, 345 (2009) (noting that the Court has "recognized that a motorist's privacy interest in his vehicle is less substantial than in his home").

Nor did any of the defendants ever seize Schlueter. Indeed, only one of them even had contact with Schlueter, who entered the undercover vehicle with Matney and the confidential informant to conduct the January 6, 2016 sale. It is well-established that "not every police encounter implicates the Fourth Amendment. A seizure within the meaning of the Fourth Amendment takes place if, in view of all the circumstances surrounding the incident, a reasonable person would not believe that he was free to leave." *United States v. Shields*, 789 F.3d 733, 743 (7th Cir. 2015) (citing *Florida v. Bostick*, 501 U.S. 429, 439 (1991)). Not only did Schlueter not know that Matney was an undercover officer on January 6, but he clearly felt free to leave their encounter because he got out of the undercover car after selling the methamphetamine to the confidential informant. Because the January 6 encounter with Matney was not a seizure, the only remaining relevant event is Schlueter's October 2016 arrest, but none of the defendants effected that arrest. Consequently, the undisputed facts show that Schlueter cannot succeed on a claim that any of the defendants violated his Fourth Amendment rights by conducting an illegal search or seizure.

## II. False Arrest and False Imprisonment

The court will next consider together Schlueter's allegations that he was falsely arrested and falsely imprisoned. "The existence of probable cause to arrest is an absolute defense to any § 1983

claim against a police officer for false arrest or false imprisonment." *Abbott v. Sangamon Cty.*, 705 F.3d 706, 713–14 (7th Cir. 2013) (citing *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006)). "Probable cause to justify an arrest exists if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed . . . a crime." *Id.* at 714 (citing *Thayer v. Chiczewski*, 705 F.3d 237, 246 (7th Cir. 2012)). Reliance on a facially valid arrest warrant similarly provides a police officer a defense to a false arrest or false imprisonment claim. *See Brunson v. Murray*, 843 F.3d 698, 709 (7th Cir. 2016) ("A police officer who receives a facially valid arrest warrant is ordinarily expected to act upon it, not to second-guess the court's decision to issue it. The officer does not personally violate the Constitution by making the arrest the court has authorized.").

All three defendants participated in the investigation that resulted in Schlueter's arrest, and as a result, in September 2016 Matney signed a probable cause affidavit that contributed to issuance of the arrest warrant. ECF No. 41-2. As already noted, however, none of the defendants personally effected Schlueter's October 2016 arrest, indicating that none of them could be liable for a false arrest or false imprisonment claim. Schlueter seems to assert in his complaint that the clerical error on the Record and Receipt form for the evidence from the January 11 transaction proves that the defendants engaged in some sort of conspiracy to have him arrested—an assertion that is not borne out in the undisputed facts. But even excising all information regarding the January 11 transaction from Matney's September 2016 probable cause affidavit, the affidavit would still provide ample probable cause to support Schlueter's arrest based on the January 6 transaction. Because the undisputed facts therefore show that probable cause supported the warrant issued for Schlueter's arrest, his false arrest and false imprisonment claims also fail.

**III. Malicious Prosecution**

Although malicious prosecution is not actionable under § 1983 if an adequate state law remedy is available, the Seventh Circuit has held that Indiana law does not provide an adequate remedy for malicious prosecution claims. *Howlett v. Hack*, 794 F.3d 721, 727 (7th Cir. 2015) (citing *Julian v. Hanna*, 732 F.3d 842, 845–49 (7th Cir. 2013)). Because there is "no 'federal right not to be summoned into court and prosecuted without probable cause,'" however, a plaintiff raising a malicious prosecution claim under § 1983 "must allege a violation of a particular constitutional right, such as the right to be free from unlawful seizures under the Fourth Amendment, or the right to a fair trial under the Due Process Clause." *Id.* at 727–28 (first quoting *Ray v. City of Chicago*, 629 F.3d 660, 664 (7th Cir. 2011); then quoting *Welton v. Anderson*, 770 F.3d 670, 673 (7th Cir. 2014)). Specifically, "a plaintiff must demonstrate that (1) he has satisfied the elements of a state law cause of action for malicious prosecution; (2) the malicious prosecution was committed by state actors; and (3) he was deprived of liberty." *Welton*, 770 F.3d at 674 (7th Cir. 2014) (citing *Reed v. City of Chicago*, 77 F.3d 1049, 1051 (7th Cir. 1996)). The elements of a malicious prosecution action under Indiana law are: "(1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted maliciously in so doing; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor." *Id.* (internal quotation mark omitted) (quoting *Golden Years Homestead, Inc. v. Buckland*, 557 F.3d 457, 462 (7th Cir. 2009)).

Even examining the evidence in the light most favorable to Schlueter by treating Moore's clerical error on the Record and Receipt form as evidence of "malice" towards him—an extremely generous reading of the evidence—the undisputed facts still show that Schlueter cannot succeed on

9

a malicious prosecution claim. It is not clear which constitutional rights he alleges the defendants violated in prosecuting him maliciously, and the discussion above has already shown that he cannot succeed on his claims that any defendant violated his rights under the Fourth Amendment. Moreover, to succeed on the malicious prosecution claim, Schlueter must be able to show that there was no probable cause to support the investigation and subsequent prosecution. But even setting aside the evidence from the January 11 transaction due to Moore's clerical error, there is no dispute that the January 6 transaction gave the defendants probable cause to believe that Schlueter engaged in the distribution of methamphetamine. The existence of that probable cause would be fatal to his claim under Indiana law and therefore necessarily defeats his § 1983 claim as well.

**IV. Due Process Clause**

Schlueter's complaint makes an undeveloped claim that the defendants' actions towards him reflect a "violation of due process" (ECF No. 1 at 3), but the undisputed facts show that he cannot succeed on a claim under the Due Process Clause of the Fourteenth Amendment. Under what the Supreme Court has called the substantive component of the Due Process Clause, a person may succeed on a claim by proving that he "has been subjected to 'the arbitrary exercise of the powers of government, unrestrained by the established principles of private rights and distributive justice.'" *Doe v. City of Layayette*, 377 F.3d 757, 768 (7th Cir. 2004) (quoting *Bank of Columbia v. Okely*, 17 U.S. (4 Wheat.) 235 (1819)). However, the Supreme Court has also clarified that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of governmental behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v Oliver*, 510 U.S. 266, 273 (1994) (plurality) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)); *id.* at 281

10

(Kennedy, J., joined by Thomas, J., concurring in the judgment) ("I agree with the plurality that an allegation of arrest without probable cause must be analyzed under the Fourth Amendment without reference to more general considerations of due process."). The Seventh Circuit, too, has noted that "[a] plaintiff cannot state a due process claim 'by combining what are essentially claims for false arrest under the Fourth Amendment and state law malicious prosecution into a sort of hybrid substantive due process claim under the Fourteenth Amendment.'" *Brooks v. City of Chicago*, 564 F.3d 830, 833 (7th Cir. 2009) (quoting *McCann v. Mangialardi*, 337 F.3d 782, 786 (7th Cir. 2003)).

It is precisely such an impermissible hybrid claim that Schlueter seems to raise here. As already discussed at length, his Fourth Amendment claims for illegal search and seizure, false arrest, and malicious prosecution all fail on their merits. Nothing about the undisputed facts suggests that he was subjected to the arbitrary imposition of governmental power as part of his arrest and subsequent prosecution. To the contrary, the undisputed facts show that he was arrested pursuant to a warrant that was supported by probable cause—even excluding from consideration all evidence pertaining to the January 11 transaction "tainted" by Moore's clerical error. These facts therefore not only defeat any claim of arbitrariness but also show that Schlueter cannot prevail under the Fourth Amendment's more specific protections; either result prevents him from succeeding on a due process claim.

## CONCLUSION

For the foregoing reasons, the defendants' motions for summary judgment (ECF Nos. 36, 41) are **GRANTED**. Because the court concludes that, under the undisputed facts, Schlueter cannot succeed on the merits of his claims alleging illegal search and seizure, false arrest, false imprisonment, malicious prosecution, and denial of due process, there is no need to address the

11

defendants' qualified immunity and other arguments. Additionally, because no further discovery will be necessary as a result of this court's decision granting summary judgment, the defendants' joint motion for an extension of time to conduct discovery (ECF No. 50) will be **DENIED** as moot. This action is dismissed, and the Clerk is directed to enter judgment accordingly.

**SO ORDERED** this 15th day of May, 2018.

s/ William C. Griesbach<br>
William C. Griesbach, Chief Judge[*]<br>
United States District Court - WIED

---

[*] Of the Eastern District of Wisconsin, sitting by designation.